(73 App. Div. 483.)

## PEOPLE v. GILMOR.

(Supreme Court, Appellate Division, First Department.  June 20, 1902.)

1. **PURE FOOD LAW—ADULTERATED MILK—ACTION FOR PENALTY—SAMPLING MILK—PRODUCERS—SUFFICIENCY OF EVIDENCE.**

    Laws 1893, c. 338, § 12, as amended, provides that in taking samples of milk for analysis when the same is delivered by the "producer," the commissioner of agriculture shall, within 10 days after the taking of the first sample, take a like sample of the mixed milk of the cows from which the first milk sampled was drawn, and that, if the last sample contains no higher percentage of milk solids and fats than the first, no action shall lie against the "producer" for violation of section 20, subds. 1, 2, 7, 8. *Held*, in an action for the penalty imposed by section 37 for exposing for sale milk below the standard required by section 20, subds. 1–3, testimony showing that the milk in question, which was from a can bearing defendant's mark, came from his farm, was sufficient to support a conclusion that defendant was a producer, as distinguished from a mere seller, though there were cans in defendant's wagon belonging to others.

2. **SAME—ACTION FOR PENALTY—STATUTORY DEFENSE.**

    Inasmuch as section 37 imposes the penalty for violation of the provisions of article 2, which contains section 20, the contention that section 12, which refers in terms to section 20, does not apply to actions for penalties, but only to prosecutions, is untenable.

Appeal from special term, New York county.

Action by the people against John D. Gilmor.  From a judgment dismissing the complaint, plaintiff appeals.  Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Cromwell G. Macy, for the People.

John A. Mapes, for respondent.

O'BRIEN, J.  The action was brought to recover a penalty for an alleged violation of the agricultural law (chapter 338, Laws 1893, as amended) by offering or exposing for sale milk claimed to be adulterated, within the meaning of the provisions of that law.  The plaintiff proved that on June 9, 1900, an inspector found upon a wagon at the Twenty-Third Street Ferry thirty cans of milk which bore defendant's mark.  Although he examined some fifteen cans, he took from but one can two samples of milk, one of which he sealed, and gave to the driver, and the other to a chemist employed by the department, to be analyzed.  The certificate of the chemist showed 88.84 per cent. of water, 11.16 per cent. milk solids, and 3.59 per cent. of milk fats in the sample, whereas the standard as fixed by the act required that the component parts should be water 88 per cent., milk solids 12 per cent., and milk fats 3 per cent.  It will be noticed by comparing the standard requirements with the component parts of the milk of the one can examined that the deviations from the standard were fractional as to two of the component parts, while as to the third,—that of milk fats,—which the law says must not be less than 3 per cent., the percentage was in fact 3.59.  The question whether merely sampling one out of thirty cans was a compliance with the spirit of the statute may be doubted, because it seems, as

matter of first impression, to be manifestly unjust to do as the inspector here did, which was to examine fifteen cans, and then take a sample from one which he found to be the poorest, and confine the analysis to such sample. In People v. Wiard, 61 App. Div. 612, 69 N. Y. Supp. 1142, affirmed 170 N. Y. 590, 63 N. E. 1120, it was said:

"An analysis of a sample of milk taken from only part of the product delivered by the producer at any one time to a single purchaser will not afford a basis for an action for a penalty."

Passing this point, however, we think that the learned judge at special term was right in dismissing the complaint upon the ground that the failure to make a second inspection at the farm of the mixed milk of the herd of cows from which the milk first sampled was drawn was fatal to recovery. Section 12 of the act provides:

"In taking samples of milk for analysis, * * * where the same is delivered by the producer, * * * the said commissioner of agriculture or assistant or his agent or servants shall within ten days thereafter with the consent of the said producer, take a sample in a like manner, of the mixed milk of the herd of cows from which the milk first sampled was drawn, and shall deliver the duplicate sample to the said producer, and shall cause the sample taken by himself or his agent to be analyzed. If the sample of milk last taken * * * shall upon analysis prove to contain no higher percentage of milk solids or no higher percentage of fats than as the sample taken (referring to the first sample), * * * then no action shall lie against the said producer," etc.

It is admitted that no attempt was made to comply with this provision of the law, and the only question presented for our determination, therefore, is whether or not it is applicable. In that connection the first consideration is as to whether the defendant was a producer, as distinguished from a mere seller, of milk. Although there were upon the wagon other cans of milk, the testimony shows that the milk from the can sampled bearing the defendant's mark came from his farm at Vails Gate, Orange county, and therefore the conclusion is supported that the defendant was a producer, as distinguished from a mere seller.

The argument that section 12 is only applicable to a criminal proceeding, and does not apply in an action for a penalty, we think is untenable. The language of section 12 is that "no action shall lie against the said producer for violation of subdivisions 1, 2, 3, 7, and 8 of section 20 of the agricultural law," and subdivisions 1, 2, and 3 of section 20 refer in terms to the standards required with respect to the component parts of milk which we have discussed, and section 37 provides that penalties shall be imposed for a violation by any person of the provisions contained in article 2 of the agricultural law, in which article section 20 is to be found.

It follows, therefore, that the disposition made by the learned judge at special term was right, and that the judgment appealed from should be affirmed, with costs. All concur.