THE PEOPLE OF THE STATE OF NEW YORK, on Complaint of JOSEPH
GOLDSTEIN, Complainant, *v.* NATHAN EICHEN, Defendant.

Municipal Term of Court of Special Sessions of New York, Borough of
Brooklyn, June 24, 1938.

*William C. Chanler, Corporation Counsel [Morton Rosenthal* of
counsel], for the People.

*Harry L. Marcus,* for the defendant.

BROMBERGER, C. M. This is a prosecution brought by an
inspector of the health department against defendant for violation
of section 152 of the Sanitary Code (New York Code of Ordinances,
chap. 20, art. 9, § 152), in that he allegedly did " keep, have, sell
or offer for sale " milk which was adulterated in that it contained
less than eleven and one-half per cent of milk solids.

The defendant is a dairy farmer having a herd of cows at Wood-
haven, borough of Queens, New York city. On February 15, 1938,
he delivered to the pasteurization plant of Columbia Farms, Inc.,
located at 400 Stanley avenue, Brooklyn, twenty forty-quart cans
of raw milk, representing the produce of his entire herd. It should
be noted that in the process of pasteurization the raw milk of a

large number of different consignors is commingled, with the result that the identity of each consignment is lost and none of the identical milk originally delivered to the pasteurizer is returned to its initial owner.

Each of the consignors, after completion of the process, immediately receives a quantity of the pasteurized product equivalent in amount to that originally brought to the plant for processing.

This commingling and pooling during pasteurization accordingly makes it extremely and correspondingly essential that the milk submitted by each individual producer be at least of the required quality, since adulteration in any form directly affects the entire mass pasteurized at that time.

The complainant inspector withdrew a sample of the milk from only one of the defendant's twenty cans brought to the pasteurization plant on the day in question. On analysis, this sample was found to contain eleven and twenty hundredths per cent of milk solids, being thus deficient and, under the statute, adulterated to the extent of three-tenths of one per cent for that particular can. An analysis of the produce of the entire herd made by the defendant's chemist on February 17, 1938, revealed that the composite sample analyzed by him yielded a result somewhat above the required percentage. The department's inspector on cross-examination admitted that if a composite sample from all twenty cans had been taken at the time of his official inspection, it would have been more truly representative of the whole.

In view of the circumstances disclosed by the evidence, I feel constrained to find in this case that there is at least a reasonable doubt as to the standard of this product as a whole since the one can was to be commingled with the remaining nineteen others belonging to this defendant. I am not satisfied with that degree of assurance necessary to support a conviction, that the milk of this herd was deficient.

Several decisions of the appellate courts in connection with similar provisions of the State agricultural laws seemingly support this view. Thus, in *People* v. *Wiard* (61 App. Div. 612; affd., 170 N. Y. 590) on the memorandum below, the *per curiam* opinion of the Appellate Division stated: " *Held*, that the analysis of a sample of milk taken from only part of the product delivered by the producer at any one time to a single purchaser will not afford a basis for an action for a penalty under the Agricultural Law (Laws of 1893, chap. 338.) All concurred, except McLENNAN, J., who dissented upon the ground that under the Agricultural Law, which provides for making a chemical analysis of a sample of milk delivered by a producer as one step in determining whether such milk has

been adulterated, it is not necessary to mix all the milk delivered at one time by the producer, and take a sample for such analysis from the whole, in order to make such analysis the basis of an action to recover the penalty fixed by the statute." Similarly, in *People v. Gilmor* (73 App. Div. 483, at p. 484): " The question whether merely sampling one out of thirty cans was a compliance with the spirit of the statute may be doubted, because it seems as matter of first impression to be manifestly unjust to do as the inspector here did, which was to examine fifteen cans and then take a sample from one which he found to be the poorest and confine the analysis to such sample."

The defendant here delivered a total quantity of milk to be pooled and pasteurized with the milk of other producers. If this consignment, taken as a whole, complied with the required standards set by the Sanitary Code as to milk solids and fats, there was no danger, from this single can, of adulteration of the rest of the milk belonging to this defendant and with which the one can was to be commingled. It is not as if one of these cans contained tubercular germs or other deficiencies which in themselves would be sufficient to contaminate the whole; in that event I would find such defendant guilty and penalize him accordingly.

It is necessary also to distinguish those cases involving the adulteration of certain meats in the process of pickling or curing, since reference has been made to it in the record and in the briefs of defendant's counsel. I have heretofore determined that a violation of the regulation against adulteration is not established where the processing of the foodstuffs there involved (tongues) had not been completed at the time of the inspection. It must be noted that in those instances the commodity retained its own identity throughout the process and if the adulteration (excess moisture content) had not been absorbed in the progress of processing, it could have been detected with respect to that specific article upon completion of the process and could not in the interim be communicated in any wise to the other products so as to affect their standard of quality. Here, however, we have a situation in which the identity of a substandard product is lost in the process and where, in its commingled state during the pasteurization, any substandard or deleterious component fluid of a single owner would tend to lower the standard of quality of the mass and thus adversely affect the products of others.

The instances in which a dealer sells to various purchasers from various cans and where each can constitutes a completed and processed unit in itself, are also to be distinguished from the instant

facts. It would seem unreasonable and unnecessary in those cases to require an analysis of a composite sample from the various other cans. (*People* v. *Bailey*, 136 App. Div. 130.)

There is no reason why the standard of quality of one farmer's milk should be lowered or otherwise adversely affected by the substandard quality of the lacteal fluid delivered to the pasteurizer by another farmer. Were I satisfied here that the aggregate of the defendant's product to be thus processed failed of the required and established standard, I should unhesitatingly find him guilty and penalize him accordingly. A contrary conclusion is compelled only because of uncontradicted evidence of a credible character that the entire quantity of milk from this herd delivered by the defendant for processing, exceeded such requirements and the sample withdrawn was insufficient to establish to my satisfaction any contrary facts.

Raw milk delivered for pasteurization is in fact a barter and an exchange for an equivalent quantity of the pasteurized product. The consignor does not receive the identical milk which in the raw state he delivers to the pasteurization plant, but in fact receives merely an equivalent of the total quantity of fluid which has been commingled and originally belonged to many other distinct and separate consignors.

The statute is sufficiently comprehensive to reach and penalize any offense of this character where milk is delivered to a pasteurizer and its substandard quality as a whole is satisfactorily established. My decision in the instant prosecution proceeds not upon that basis but upon the ground above indicated, that the sample taken did not establish to my satisfaction that the entire product of this single producer was violative of the legal requirements.

Accordingly, the defendant's motion to dismiss the information is granted and the defendant discharged.